**STATE OF WEST VIRGINIA**

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **E.J. and B.J.-C.**

**No. 19-0887** (Raleigh County 18-JA-174-B and 18-JA-175-B)

**MEMORANDUM DECISION**

Petitioner Father H.C., by counsel Matthew A. Victor, appeals the Circuit Court of Raleigh County's September 10, 2019, order terminating his parental rights to E.J. and B.J.-C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Stanley L. Seldon, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

After the unsuccessful implementation of an in-home safety plan, the DHHR filed an abuse and neglect petition in July of 2018, against petitioner and the mother alleging that they abused substances, trafficked drugs, and engaged in domestic violence in the children's presence. The DHHR further alleged that the home was filthy, unsanitary, and lacked working utilities. The children were found unbathed and one child complained that she did not want to stay in the home. The other child divulged to a DHHR worker that she witnessed petitioner repeatedly punch the mother in the face. As a result of that report, petitioner was arrested and charged with domestic battery. When interviewed by the DHHR worker, petitioner admitted to hitting the mother while he was "blacked out" drunk. Petitioner's home confinement officer confirmed that petitioner tested positive for methamphetamine, amphetamine, and tetrahydrocannabinol ("THC") in June of 2018.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Petitioner waived his preliminary hearing and was ordered to submit to a parental fitness evaluation and random drug screening.

At an adjudicatory hearing held in September of 2018, petitioner stipulated to the allegations of his drug abuse and domestic violence as contained in the petition, and the circuit court adjudicated him as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, and the circuit court granted the motion. The terms of petitioner's improvement period included participation in domestic violence prevention classes, substance abuse counseling, regular drug screening, parenting and adult life skills classes, and supervised visitations.

In December of 2018, the circuit court held a status hearing on petitioner's improvement period and found that he was substantially complying with its terms and conditions as he had been attending domestic violence prevention classes, adult life skills classes, parenting classes, supervised visitations with the children, and random drug screening. At a review hearing held in February of 2019, the circuit court found that petitioner had made some progress but needed additional time to complete his case plan. Petitioner moved to extend his improvement period, and the DHHR did not object. However, the guardian objected, arguing that petitioner continued to test positive for THC and alcohol and had not completed his domestic violence classes. The circuit court granted petitioner's motion but ordered that the improvement period be terminated if petitioner's levels of THC and alcohol did not decrease.

Thereafter, the DHHR submitted its May 10, 2019, court summary; it reported that petitioner had a physical altercation with the children's relative foster parent, his drug screens continued to test positive for THC and alcohol, and the mother appeared to have marks on her face indicating petitioner's recent abuse. Further, the DHHR reported that petitioner was involved in a separate physical altercation with a roommate. As such, the DHHR recommended that the matter be set for disposition. At the final review hearing on May 14, 2019, the circuit court terminated petitioner's improvement period and set the matter for disposition.

The dispositional hearing was held in August of 2019. The DHHR presented evidence that petitioner had not complied with his case plan and argued in favor of terminating his parental rights. Specifically, petitioner missed twenty-one drug screens and tested positive for methamphetamine, amphetamine, THC, and alcohol on six screens. Also, petitioner failed to complete his domestic violence prevention classes and substance abuse treatment or maintain a habitable home environment. Petitioner moved for a post-dispositional improvement period, but the circuit court denied the motion, finding that petitioner had not substantially complied with his post-adjudicatory improvement period. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by order entered on September 10, 2019.[2] It is from the dispositional order that petitioner appeals.

---

[2]According to respondents, the permanency plan for the children is reunification with the mother. The concurrent permanency plan is adoption in the relative foster placement.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's sole assignment of error is that the circuit court erred in terminating his parental rights "by failing to extend him an improvement period" when he asserts that his post-adjudicatory improvement period was successful. In support, petitioner argues that he satisfied the conditions of his improvement period and resolved his issues with domestic violence, but the DHHR failed to help him fully address his drug addiction.[3] We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when,

[s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period[.]

---

[3]While petitioner argues that the circuit court erred in refusing to grant him an extension of his improvement period, the record shows that petitioner was, in fact, granted an extension of his post-adjudicatory improvement period. After the expiration of the extension of his post-adjudicatory improvement period, petitioner requested a post-dispositional improvement period and the circuit court denied the request. Because West Virginia Code § 49-4-610(6) permits only one three-month extension of a post-adjudicatory improvement period, we will address only the circuit court's denial of petitioner's request for a post-dispositional improvement period, despite the specific language of petitioner's assignment of error on appeal.

Here, petitioner was granted a post-adjudicatory improvement period and an extension of that improvement period, but failed to demonstrate that he experienced a substantial change in circumstances or that he was likely to fully participate in another improvement period. While it is true that petitioner complied with some terms of his case plan, such as completing adult life skills and parenting classes, he failed to comply with drug screening by missing screens and testing positive for substances throughout the proceedings. In fact, petitioner does not deny that he failed to comply with drug screening and maintain sobriety. Instead, petitioner places the blame for his failure upon the DHHR. However, petitioner bore the responsibility to initiate and complete all of the terms of the improvement period, including seeking adequate treatment for his drug addiction. *See* W. Va. Code § 49-4-610(4)(A). Further, contrary to petitioner's assertion that there was no evidence that he continued to perpetuate domestic abuse, the DHHR's May 10, 2019, court summary reported that the mother had new marks on her face, indicating petitioner's continued abuse, and that petitioner perpetrated two other physical altercations—one with the children's relative foster parent and one with his roommate. The record simply does not support petitioner's assertion that he solved his proclivity to commit domestic violence.

Additionally, petitioner fails to acknowledge that the circuit court, in fact, granted him an extension of his post-adjudicatory improvement period with the condition that his THC levels and alcohol use decrease. Despite the additional time to address his drug addiction, petitioner continued to miss screens, test positive for substances, and place blame on the DHHR for his failures. The circuit court, having learned of petitioner's noncompliance with the terms and conditions of his post-adjudicatory improvement period, reasonably believed that petitioner was unlikely to comply with another improvement period. We have held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened . . . ." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part. The circuit court was not required to wait and see if petitioner would finally address his severe substance addiction and domestic violence issues. As we have previously noted,

> the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement. The legislature has recognized this by limiting the extent and duration of improvement periods a court may grant in an abuse and neglect case.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257-58, 470 S.E.2d 205, 211-12 (1996). Based on the foregoing, we find no error in the circuit court's denial of petitioner's post-dispositional improvement period.

Moreover, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019)[4] permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the

---

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

4

children. Further, pursuant to West Virginia Code § 49-4-604(c)(3) (2019), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Here, the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect given his untreated addiction and noncompliance during the proceedings. Below, petitioner stipulated that his drug addiction and acts of domestic violence negatively impacted his ability to parent the children. Despite this admission, petitioner failed to comply with drug testing and continued to test positive for methamphetamine, amphetamine, THC, and alcohol. At disposition, the DHHR presented evidence that petitioner attacked another person during a supervised visit with the children and had a physical altercation with another individual. Clearly, petitioner failed to follow through with any rehabilitative efforts required by his improvement period. Additionally, the record shows that the children's welfare required termination of petitioner's parental rights as there was evidence that petitioner's violent behaviors continued, which would place the children in danger. Further, petitioner's untreated substance abuse prevented him from properly parenting and supervising the children. Therefore, sufficient evidence was presented to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination of petitioner's parental rights was necessary for the children's welfare.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court

5

finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison